**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Susan Beecham, | : | Case No. 3:07CV1881 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423. Pending are the parties' briefs and Plaintiff's Reply (Docket Nos. 13, 16 and 17). For the reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

**PROCEDURAL BACKGROUND**

Plaintiff applied for DIB on February 4, 2003, alleging that she had been disabled since November 1, 1998 (Tr. 67-69). Her application was denied initially (Tr. 58-60). On May 17, 2004, Plaintiff, represented by counsel, and Vocational Expert (VE) Dr. Richard Barrett appeared at a hearing conducted by Administrative Law Judge (ALJ) Jerome B. Blum (Tr. 29). On July 21, 2004, ALJ Blum issued an unfavorable decision (Tr. 18-21). The Appeals Council denied Plaintiff's request for review on October 18, 2004 (Tr. 5-7). Plaintiff filed a timely request for judicial review in the United States District Court for the Northern District of Ohio, Western Division (Case No. 3:04 CV 7760). The Court

approved a joint stipulation of the parties ordering that the case be remanded pursuant to sentence four of 42 U. S. C. § 405(g) (Tr. 438).

On remand, a video hearing was conducted on June 26, 2006. Appearing before ALJ D. Kramer were Plaintiff, represented by counsel, VE Joseph Thompson and Plaintiff's spouse (Tr. 470). The ALJ published an unfavorable decision on December 29, 2006 (Tr. 421-423, 424-431). This decision became the final decision of the agency when the Appeals Council denied review (Tr. 406-409). Plaintiff then filed a timely action in this Court seeking judicial review of the Commissioner's decision denying benefits.

## **JURISDICTION**

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## **FACTUAL BACKGROUND**

At the initial hearing, Plaintiff was 47 years of age, she weighed 252 pounds and was 5'6" tall (Tr. 32, 42). She had some post-high school training in cosmetology (Tr. 32). She had been employed primarily in nursing homes providing patient care (Tr. 33). In 1998, she was employed as a manager at Sunoco and for a couple of weeks as a housekeeper (Tr. 39, 40). She was also employed as a shoe salesperson (Tr. 39, 54). Plaintiff was last employed in 1999 (Tr. 33).

Plaintiff claimed that she had been unable to work because of complications from multiple lesions on her brain, fibromyalgia, diabetes, bone deterioration, chronic obstructive pulmonary disease (COPD) and/or asthma and the need for oxygen 70% of the day, floating bone, spine compression, short term memory loss, aortic stenosis and depression (Tr. 33, 34, 35, 36, 52, 53). Plaintiff wore a motor

brace on her left leg due to bone deterioration (Tr. 34). Oxygen was used to treat symptoms associated with COPD and asthma (Tr. 35). Plaintiff was prescribed a morphine patch for pain (Tr. 37). On an average day, Plaintiff arose at 3:00 A.M. so that her husband could apply the brace to her leg, administer her medication and take her to the bathroom. Plaintiff was awakened up to five times nightly by "pain spots" (Tr. 36-37). At the time of the hearing, Plaintiff did not drive, grocery shop or clean house (Tr. 41, 42).

Plaintiff estimated that she could not sit for extended periods of time without lying down. She could not hold or grasp pencils very long because of hand pain (Tr. 38). Plaintiff left her employment at Sunoco because she could no longer lift cases of oil or antifreeze weighing up to fifty pounds. Moreover, she could not withstand the exposure to the environmental changes (Tr. 44).

The VE, a licensed vocational clinical psychologist, assumed that Plaintiff could not return to her prior work but that she could perform sedentary work. In particular, Plaintiff could perform bench type operations and service occupations. There were 4,000 bench type operation jobs in the metropolitan area, 120,000 in the country and 7,000 in the state (Tr. 54). There were approximately 6,000 service occupation jobs in the metropolitan area, 11,000 in the state and 150,000 in the economy (Tr. 55). At the time Plaintiff's earnings period expired in September 2000, there would have been up to a 10% increase in the jobs available (Tr. 55).

At the remand hearing, Plaintiff explained that she could not perform her duties as a housekeeper because she had to frequently stop working to rest (Tr. 482-483). Plaintiff further explained that she left Sunoco because she needed to sit and take rests up to twenty minutes (Tr. 478). At the time she was treating with a rheumatologist who prescribed medication for her. Initially, the medication relieved the pain but did nothing for her insomnia and fatigue (Tr. 479). On some days, Plaintiff did not get out of

bed (Tr. 480). In fact, during August 2000, she had a period of time that she could not get up, move around or drive (Tr. 491).

At times, Plaintiff's pain was so severe that she could not walk up the stairs or pick up a can (Tr. 480). Often she would take hot baths to obtain pain relief (Tr. 481). When Plaintiff had flare-ups, she could do light household chores, such as make her bed, dust, wash dishes and cook. However, she did not drive or do the grocery shopping. During the flare-ups she was narcoleptic and she would occasionally lose feeling in her feet (Tr. 483, 484). She could not button her clothing and her husband put on and tied her shoes (Tr. 489).

Plaintiff testified that even if she had sedentary employment, she could not work. Sitting for extended periods of time hurt her back. Standing was equally painful (Tr. 487).

Plaintiff's husband testified that Plaintiff had difficulty falling asleep (Tr. 492). He confirmed that during the night, he might help his wife take up to six baths to relieve pain (Tr. 493). Mr. Beecham vacuumed, carried the laundry up and down the stairs and did the laundry. Plaintiff did some light cooking because her cramped hands interfered with her ability to manipulate a knife (Tr. 494). Plaintiff had difficulty climbing stairs but could descend by sitting down and scooting on the stairs (Tr. 494, 495).

The VE testified that based on Plaintiff's hand cramping, fatigue, flare ups lasting several weeks, difficulty walking, standing and sitting, she could not perform any of her past work at the time of hearing or at the time her insured status expired (Tr. 498). Her weight would not affect her ability to perform work at a sedentary level.

Based on the DICTIONARY OF OCCUPATIONAL TITLES, the three jobs that Plaintiff could perform included information clerk, appointment clerk and cashier. The VE estimated that Plaintiff could learn to perform the tasks associated with these semiskilled positions in approximately three months (Tr. 499).

Based on the DICTIONARY OF OCCUPATIONAL TITLES, the VE opined that Plaintiff could also perform the following sedentary, unskilled jobs: order clerk for food and beverage, telephone quotation clerk and surveillance monitor.

## **MEDICAL EVIDENCE**

In order to establish entitlement to DIB, an individual must establish that he or she became insured prior to the expiration of his or her insured status. 42 U. S. C. § 423(a) and (c) (Thomson/West 2008). Plaintiff's date last insured was September 30, 2000. Thus, post-expiration evidence is only recorded if it relates back to Plaintiff's condition prior to the expiration of her date last insured.

### *1994*

Plaintiff's podiatric history included treatment by a Toledo physician for heel spurs (Tr. 400).

### *1999*

On April 28, Plaintiff complained to Dr. Thomas J. Santoro that she had whole body aches. Dr. Santoro delayed prescribing medication until Plaintiff's next visit (Tr. 137). During the follow-up visit on May 12, Dr. Santoro eliminated one medication and increased the dosage of Plaintiff's pain reliever (Tr. 136).

Plaintiff was treated for chest pains in December. Borderline cardiac enlargement was noted (Tr. 171).

### *2000*

Dr. Santoro noted in February that Plaintiff had 18 of 18 possible tender points. Her fibromyalgia was not responding to the multiple prescribed medications (Tr. 134). Plaintiff had a flare-up approximately three weeks prior to July 26. When she was treated by Dr. Santoro on July 26, she had no pain (Tr. 132).

5

*2001*

Dr. Malcolm T. Doyle compared the magnetic resonance imaging (MRI) study conducted in 1999 with the study completed on February 14. He found that there was a slight progression of the parathesis as evidenced by more numerous white matter lesions (Tr. 170).

During the preoperative preparation for knee surgery, the chest X-rays from December 7, 1999 were compared with similar views taken on November 13. No evidence of acute cardiopulmonary disease was identified (Tr. 164).

## STANDARD FOR DISABILITY

To establish entitlement to disability benefits, a claimant must prove that he or she is incapable of doing substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to last for a period of twelve months or results in death. *Murphy v. Secretary of Health and Human Services*, 801 F. 2d 182, 185 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A) (1999)). The claimant must show that his or her impairment results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques derived from acceptable medical sources. 20 C.F.R. §§ 404.1513, 404.1528 (1999).

To determine disability, the ALJ uses a five-step sequential evaluation process. The ALJ considers: (1) whether claimant is working; (2) whether claimant has a severe impairment; (3) whether claimant's impairment(s) meets or equals a listed impairment in Appendix1 of Subpart P of Part 404, Listing of Impairments; (4) whether the impairment prevents the claimant form doing past relevant work; and (5)whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 1520(a)-(f) (Thomson/West 2008).

If the claimant is working or has no impairment or combination of impairments which significantly limit physical or mental abilities, a finding that the claimant is not disabled will ensue despite medical condition, age, education, and work experience. However, when an impairment meets the durational requirement and meets or equals a listed impairment in Appendix 1, a determination of disabled will issue without consideration of age, education or work experience.

If a decision cannot be made based on current work activity or on medical facts alone, and a severe impairment(s) exists, the ALJ must review the claimant's residual functional capacity (RFC) and the physical and mental demands of past relevant work. If the claimant can still do this kind of work, the ALJ will find the claimant not disabled. If the claimant cannot do any past relevant work because of the impairment, further consideration of the claimant's RFC, age, education and past work experience is explored to determine if the claimant can do other work. If the claimant cannot do other work, the ALJ must find the claimant disabled.

During the first four steps, the claimant has the burden of proof. *Walters v. Commissioner of Social Security*, 127 F. 3d 525, 529 (6th Cir. 1997) (*citing Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987)). This burden shifts to the Commissioner only at Step Five. *Id*.

## ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act on September 30, 2000.

2. Plaintiff had not engaged in substantial gainful activity since her alleged onset date, November 1, 1998, through her date last insured, September 30, 2000.

3. Through the date last insured, Plaintiff suffered from obesity, fibromyalgia, osteoarthritis

7

        of the knee and sleep problems (Tr. 426).

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P.

5. Plaintiff retained the residual functional capacity, through the date last insured, to lift and/or carry up to ten pounds, sit six hours per eight-hour day and stand and/or walk two hours per eight-hour day (Tr. 428).

6. Through the date last insured, Plaintiff was unable to perform her past relevant work.

7. Plaintiff was 43 years old, a "younger individual," with a high school education and able to communicate in English.

8. Transferability of job skills was not material to the determination of disability because using the Medical Vocational Rules as a framework, a finding of not disabled will issue whether or not Plaintiff had transferrable job skills.

9. Through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 430).

10. Plaintiff was not under a "disability," as defined in the Act, at any time from November 1, 1998, through September 30, 2000 (Tr. 431).

## STANDARD OF REVIEW

Pursuant to 42 U. S. C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Id*. (*citing Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. (*citing Kirk v. Secretary of Health and Human Services*, 667 F. 2d 524, 535, (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id*. (*citing*

*Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F. 2d 383, 387 (6th Cir. 1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id*. (*citing Kirk, supra,* 667 F. 2d 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently. *See Kinsella v. Schweiker*, 708 F. 2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F. 2d 535, 545 (6th Cir. 1986) (en banc).

## DISCUSSION

Plaintiff seeks reversal of the Commissioner's decision on the following bases:  First, the ALJ was not justified in rejecting the evidence from Dr. Santoro in assessing her residual functional capacity. Second, the medical record does not support the ALJ's residual functional capacity finding. Third, the ALJ erred in making an adverse credibility determination. Fourth, the ALJ erred in considering her daily tasks as indicative that she could engage in full time activities. Fifth, the ALJ erred by failing to find that there was no work she could do. Sixth, the ALJ improperly relied upon the Medical-Vocational Rules.         Defendant responded as follows:  First, that the ALJ did not attribute controlling weight to Dr. Santoro's opinions because they were not opinions outlining Plaintiff's work related limitations during the relevant time period. Second the ALJ provided multiple valid reasons for finding that Plaintiff's statements were not fully credible. Third, there is substantial evidence to support the ALJ's step five finding. Finally, the ALJ properly utilized the Medical Vocational Rules in making his step five finding.  <u>1.</u>        <u>The ALJ's treatment of the medical opinion evidence</u>.

Plaintiff argues that the ALJ failed to attribute controlling weight to Dr. Santoro's opinion that

9

she is essentially incapacitated by pain.

In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. *Rogers v. Commissioner of Social Security,* 486 F. 3d 234, 242 (6th Cir. 2007). Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004)). If the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Id.* (*citing Wilson,* 378 F.3d at 544).

When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id*. (*citing* Wilson, 378 F. 3d at 544). There is a rebuttable presumption that the treating physician's opinion is entitled to great deference, its non-controlling status notwithstanding. *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *4).

The ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* at SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *5). The reason to employ this standard is twofold: the claimant understands the disposition of his or her case and the reviewing court can conduct meaningful review of the ALJ's application of the rule. *Id.* (*citing Wilson,* 378 F. 3d at 544) (*quoting Snell v. Apfel*, 177 F. 3d 128, 135

(2nd Cir. 1999)).

Here, the claim that Plaintiff was "now essentially incapacitated" by pain is not case dispositive. The conclusion was made after the initial consultation.  At that time, Dr. Santoro had not conducted any clinical or diagnostic studies.  The statement was clearly a reflection of Plaintiff's subjective complaints made for purposes of treatment.  During the course of treatment, Dr. Santoro noted that Plaintiff had no complaints of pain.  The symptoms were well-controlled with drug therapy (Tr. 132).  The ALJ was not required to attribute controlling weight to Dr. Santoro's claim that Plaintiff was incapacitated by pain since that conclusion is not well-supported by evidence in the record.

2. <u>The medical record does not support the ALJ's residual functional capacity finding</u>.

Plaintiff claims that the medical record is not indicative of a residual functional capacity for sedentary work.  Specifically, the ALJ relied on a July 2000 note that would neither detract from nor support a finding that Plaintiff had a residual functional capacity for sedentary work.

Residual functional capacity assessment is a term of art in Sections 404.1545 and 416.945 and 404.1546 and 416.946 intended to describe the ultimate finding about a person's ability to do work-related activities.  STANDARDS FOR CONSULTATIVE EXAMINATIONS, HALLEX II-4-1-2, 1996 WL 1586732 (October 31, 1996).  The ALJ's assessment of residual functional capacity is driven by consideration of all the relevant medical and other evidence.  20 C. F. R. § 416.945(a)(3) (Thomson/West 2008).  It is a determination made by an adjudicator based upon his or her review of the entire case record including but not limited to observations of lay witnesses of a claimant's apparent symptomatology, a claimant's own statement of what he or she is able or unable to do, and many other factors that could help an adjudicator determine the most reasonable findings in light of all of the evidence.  *Id.*  Thus, a medical source's statement about what an individual can still do is opinion

11

evidence that an adjudicator considers together with all of the other evidence when assessing a claimant's residual functional capacity. *Id.*

In this case, the ALJ used Dr. Santoro's July 2000 note that Plaintiff's symptoms were controlled by medication and other medical evidence in assessing residual functional capacity. The ALJ was required under procedural rules to consider this relevant evidence in assessing Plaintiff's residual functional capacity. He then provided a detailed analysis of the evidence considered in arriving at Plaintiff's residual functional capacity. This, too, was required by the procedural rules. Since the ALJ was charged with assessing residual functional capacity and he did so employing the proper legal standard, the Magistrate affirms his assessment of Plaintiff's residual functional capacity.

3.      The ALJ erred in making an adverse credibility determination.

First, Plaintiff contends that there is substantial evidence that her testimony was credible. She focused her testimony on the relevant time period prior to expiration of her insured status during the remand hearing. Her spouse corroborated such testimony. The ALJ compared the testimony from the prior hearing and found that Plaintiff had exaggerated when claiming that her symptoms had gotten worse since 1999.

There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 475-476 (6th Cir. 2003) (*citing Young v. Secretary of Health & Human Services,* 925 F.2d 146, 150-51 (6th Cir.1990); *Duncan v. Secretary of Health & Human Services,* 801 F.2d 847, 852 (6th Cir.1986)). An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability. *Id*. at 476 (*citing Walters v. Commissioner of Social Security*, 127 F.3d 525,

531 (6th Cir. 1997); (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 538 (6th Cir.1981)).

The Magistrate will accord the ALJ's credibility finding deference. In light of the observations made by Plaintiff, her treating physician and her spouse, the ALJ found that her impairments could conceivably produce the alleged symptoms but Plaintiff's statements were inconsistent with respect to the intensity, persistence and limiting effects of the symptoms. This explanation for partially discrediting Plaintiff's testimony is reasonable since the evidence provided by Dr. Santoro did not support her claims prior to the expiration of her insured status. None of the other evidence in the record supported her testimony.

Second, Plaintiff contends that credibility was not at issue since the ALJ stated on the record that he was not worried about it. The Magistrate cannot find that this statement is determinative of ALJ's credibility assessment or that it precluded further review of Plaintiff's credibility. Viewed in context, the statement was aimed at Plaintiff's counsel to proceed with an explanation of why Plaintiff was unable to work. The ALJ did not say that he was not going to consider credibility but that he was not concerned about it at that juncture of the testimony.

Even if the ALJ were to find Plaintiff fully credible, the outcome would be the same as there is no medically determinable evidence that Plaintiff's impairments were of the severity to be disabling prior to the expiration of her insured status. The ALJ's misstatement under these circumstances would not alter the outcome of the decision.

4. <u>The ALJ erred in considering Plaintiff's daily tasks as indicative of her ability to engage in full time activities.</u>

Plaintiff argues that her ability to engage in certain social and household activities are not competent evidence of her ability to engage in the full time activities required for substantial

13

employment.

An ALJ may consider household chores and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments. *Walters, supra*, 127 F. 3d at 532 (*citing Blacha v. Secretary of Health and Human Services*, 927 F. 2d 228, 231 (6th Cir. 1990); *Crisp v. Secretary of Health and Human Services*, 790 F. 2d 450, 453 (6th Cir. 1986)). Plaintiff admitted that prior to the expiration of her insured status, she could drive, grocery shop, contend with her personal hygiene and do housework. These social and household tasks were not referred to exclusively to assess whether Plaintiff could engage in full-time activities required for substantial employment. Instead, the ALJ used such activities to gauge Plaintiff's ability to engage in life activities in the face of alleged disabling pain. This finding along with other competent evidence was used appropriately to assess residual functional capacity at step five of the sequential evaluation.

5       <u>The ALJ erred failing to find that there was no work that Plaintiff could perform and the ALJ improperly applied the Grids.</u>

Plaintiff argues that the Commissioner failed to sustain its proof required at step five of the sequential evaluation. The VE's responses are not admissible or probative on the issues and the Grids are not applicable.

It is a clearly established rule that a VE's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments. *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987). A VE's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Id*. A hypothetical question need only include those limitations accepted as credible

14

by the ALJ.  *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir.1993).

Here, the Magistrate finds that the failure to pose the appropriate question to the VE is not violative of the Order of the Appeals Council as the decision to obtain evidence from a VE was discretionary (Tr. 440). The Magistrate agrees that the ALJ failed to pose a hypothetical question to the VE that accurately reflected Plaintiff's physical and mental impairments. Thus, the responses from the VE regarding jobs that she could perform do not constitute substantial evidence. However, the VE's testimony was superfluous to the determination of whether Plaintiff could do other work. The ALJ properly relied on the Grids to sustain the burden at step five of the sequential evaluation.

The Dictionary of Occupational Titles contains data about the exertional and skill requirements for jobs existing in the national economy. 20 C. F. R. § 404.1569 (Thomson/West 2008). Appendix 2, the Medical-Vocational Guidelines, provides rules using this data reflecting major functional and vocational patterns. 20 C. F. R. § 404.1569 (Thomson/West 2008). These rules are applied in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work. 20 C. F. R. § 404.1569 (Thomson/West 2008).

When the limitations and restrictions imposed by the claimant's impairment(s) and related symptoms, such as pain, affect the claimant's ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), the claimant has only exertional limitations. 20 C. F. R. § 404.1569a (b) (Thomson/West 2008). When the impairment(s) and related symptoms only impose exertional limitations and the claimant's specific vocational profile is listed in a rule contained in Appendix 2 of this subpart, then the rule will be applied directly to determine disability. 20 C. F. R. § 404.1569a(b) (Thomson/West 2008). When the limitations and restrictions imposed by the claimant's

impairment and related symptoms, such as pain, affect the ability to meet the demands of jobs other than the strength demands, then the claimant has non-exertional limitations such as difficulty functioning because of nervousness, anxiety or depression, difficulty maintaining concentration and attention. 20 C. F. R. § 404.1569a(c) (Thomson/West 2008).

The medical evidence that is relevant to Plaintiff's impairment before the expiration of her insured status and the evidence adduced during the hearing showed that Plaintiff's pain affected her ability to meet the strength demands for sitting, standing, walking, lifting and carrying. At that time, Plaintiff had only exertional limitations. Accordingly, the ALJ could use the Medical-Vocational Guidelines to determine disability. Plaintiff's vocational profile consisting of a younger individual, with a high school education and able to communicate in English with prior work experience including semiskilled, unskilled and skilled labor warranted a decision of not disabled under Sections 201.27, 201.28 and 201.29. 20 C. F. R. Pt. 404, Subpt. P, App. 2 (Thomson/West 2007). The ALJ appropriately relied on the Medical-Vocational Guidelines.

## CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Commissioner's decision be affirmed and the referral to the Magistrate terminated.

                                          /s/Vernelis K. Armstrong
                                          United States Magistrate Judge

Dated: May 12, 2008

## **NOTICE**

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.