IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Susan Beecham,                                                      Case No. 3:07-CV-01881

          Plaintiff

     v.                                                                  ORDER

Michael J. Astrue,
Commissioner of Social Security,

          Defendant.

     This a social security case in which plaintiff Susan Beecham seeks judicial review of the defendant Social Security Commissioner's ["Commissioner"] final decision denying her claims for disability insurance benefits [DIB] under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423(d). Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

     Beecham objects to the Magistrate Judge's Report and Recommendation ["Report"] recommending that I affirm the Commissioner's decision. [Doc. 18]. For the following reasons, the Report shall be adopted and the Commissioner's decision shall be affirmed.

## Background

     Beecham alleges that she has been unable to work since November 1, 1998, due to fibromyalgia and its attendant impairments, including short term memory loss, fatigue, depression, and pain. Beecham was last employed in 1999. She worked primarily in nursing homes providing

patient care, but also worked as a manager at Sunoco, a housekeeper and a shoe salesperson. She has some post-high school training in cosmetology. At her initial hearing in 2004, Beecham was 47 years old, weighed 252 pounds, and stood five feet and six inches tall.

Beecham applied for DIB on February 4, 2003, and her application was denied initially. The last date on which Beecham was covered by disability insurance was September 30, 2000 [her date of last insurance or DLI]; she must, therefore, establish that she was under a disability prior to this date. *See* 20 C.F.R. §§ 404.131(a), 404.320(b)(2). On May 17, 2004, Administrative Law Judge [ALJ] Jerome B. Blum conducted a hearing. Beecham and Vocational Expert [VE] Dr. Richard Barrett appeared at the hearing.

At the time of the 2004 hearing, Beecham suffered complications from multiple lesions of her brain, fibromyalgia, diabetes, bone deterioration, chronic obstructive pulmonary disease, asthma, floating bone, spine compression, short term memory loss, aortic stenosis and depression.

Dr. Thomas J. Santoro, a rheumatologist, treated Beecham for fibromyalgia. On April 28, 1999, Beecham first visited Dr. Santoro complaining of body aches. After finding eighteen of eighteen possible tender points and conducting a differential diagnosis to rule out other causes, Dr. Santoro diagnosed Beecham with "classical" fibromyalgia. [Doc. 11, p. 138]. Dr. Santoro's April 28 notes state that Beecham was "[n]ow essentially incapacitated by pain." *Id.* On February 16, 2000, Dr. Santoro retested Beecham and again found eighteen of eighteen possible tender points, but in July 26, 2000, he only identified eleven of eighteen tender points. On July 26, Dr. Santoro also noted that Beecham had "no complaints of severe pain" but that she had had a "flare-up" about two to three weeks ago. [Doc. 11, p. 132]. On May 12, 1999, and February 16, 2000, Dr. Santoro noted

that Beecham's fibromyalgia was not responding to drug therapy. On July 26, 2000, however, Dr. Santoro noted that her condition was "well-controlled" by drugs. *Id.*

At the 2004 hearing before ALJ Blum, Beecham testified that she typically arose at three o'clock in the morning so that her husband could apply her leg brace, administer her medication, and take her to the bathroom. Beecham further testified that she had left her employment at Sunoco because she could not lift fifty-pound cases of oil and antifreeze or withstand exposure to environmental changes.

Beecham indicated that her condition had deteriorated significantly since 2000. She stated that she could not drive, clean her home, or shop at the grocery store in 2004, but that she had engaged in all these activities in 2000. On re-examination by her attorney, Beecham changed her responses, stating that she could nto drive, clean, or shop in either 2000 or 2004. Beecham weighed 189 pounds in 2000, but weighed 252 pounds in 2004. The ALJ asked Beecham whether she could have worked in a job where "all you have to do is sit behind the cash register." [Doc. 11, p. 44]. Beecham responded that she could have done so in 2000, but not in 2004.

Dr. Barrett, the VE at the 2004 hearing, concluded that in 2000 Beecham was capable of performing indoor, "sedentary, unskilled, bench type operations involving packing, sorting, inspection, and assembly" or "service occupations such as baggage checker, information clerk [or] telephone operator" [Doc. 11, p. 54]. In 2000, these jobs existed in substantial numbers in the local and national economies. The VE further noted that in 2004 Beecham was too limited to perform even these sedentary jobs.

On July 21, 2004, ALJ Blum concluded that Beecham was not under a disability as of her DLI. The ALJ determined that Beecham had a residual functional capacity for unskilled, sedentary

work. The Appeals Council denied the claimant's request for review on October 18, 2004. Beecham filed a timely request for judicial review in the United States District Court for the Northern District of Ohio, Western Division [Case No. 3:04 CV 7760]. The court approved a joint stipulation of the parties ordering that the case be remanded under 42 U. S. C. § 405(g). The Appeals Council remanded the case for a second hearing before an ALJ.

On remand, the ALJ was to evaluate the claimant's mental impairment and the claimant's subjective complaints. Also, the ALJ was to evaluate the treating, examining, and non-examining medical source opinions and "explain the weight given to such opinions." [Doc. 11, p. 439]. Finally, the order stated that the ALJ should call a vocational expert if necessary to identify appropriate jobs in light of claimant's limitations and the incidence of such jobs. ALJ Richard C. VerWiebe conducted a video hearing on June 26, 2006. Beecham, Beecham's spouse, and VE Joseph Thompson appeared.

At the 2006 hearing, Beecham testified that she suffered severe pain, insomnia and fatigue prior to 2000. She stated that in 1999 she left both her position at Sunoco and her housekeeping job because she needed to rest too frequently. In August, 2000, she stated, she could not get up or move around for a period. She was taking medication for pain, but it did not relieve her insomnia or fatigue. Further, Beecham stated that her pain was so severe in 2000 that she could not walk up stairs, pick up a can, drive, do grocery shopping, button her clothing, or put on her shoes. She could, however, do light household chores, like making her bed and dusting.

Beecham's husband testified that Beecham had difficulty sleeping and that he helped his wife take up to six baths during the night to relieve pain. He also testified that he vacuumed and did laundry, and that she had difficulty ascending stairs but could descend by sitting down and scooting

4

on the stairs. He also testified that "she did a lot of crying and she just was withdrawn." [Doc. 11, 495].

During the hearing, ALJ VerWiebe noted discrepancies between Beecham's 2004 testimony and Beecham's and her husband's testimony in 2006, especially about Beecham's daily activities in 2000. When asked about the discrepancy, Beecham explained that she had been confused about the timeline of her health's deterioration during the earlier proceeding. After an exchange with Beecham's attorney about the discrepancies, the ALJ stated, "I'm not worried about credibility[,] . . . unless they're out and out lying, which I'm sure [Beecham] is not." [Doc. 11, p. 487].

The ALJ limited evidence during the 2006 hearing to Beecham's condition before her DLI. Beecham's attorney told the ALJ that there was "a substantial body of evidence" accumulated after the date of last insurance that he had not filed because "I did not think it was relevant." [Doc. 11, p. 488]. The ALJ agreed that it was irrelevant and stated that he was interested primarily at evidence from the year prior to the DLI. In questioning Beecham, the ALJ focused his questions on the period prior to September 30, 2000.

At the 2006 remand hearing, VE Joseph Thompson testified that Beecham could not do any of her past work as of her date of last insurance. The VE stated that if Beecham were as limited in 2000 as she and her husband claimed, she could not perform any work. The ALJ asked the VE to assume that Beecham could do sedentary work and asked whether any of her skills would transfer to new, sedentary jobs. The VE responded that Beecham had sufficient skill to perform certain sedentary, semiskilled jobs, such as information clerk and appointment clerk, as well as unskilled jobs like food order clerk, telephone clerk, and surveillance monitor. The VE testified that all these jobs existed in significant numbers in the Toledo area.

5

On December 29, 2006, ALJ VerWiebe concluded that Beecham was not under a disability as of her date of last insurance. The discrepancies between Beecham's 2004 and 2006 testimony, the ALJ determined, "diminishe[d] the reliability and credibility for the relevant time period." [Doc. 11, p. 429]. The ALJ concluded that through the date last insured Beecham suffered from obesity, fibromyalgia, osteoarthritis of the knee, and sleep problems. Of Beecham's alleged depression, however, the ALJ concluded that "there is insufficient evidence to establish that claimant's depression was severe and persisted at a severe level" in the twelve months before her date of last insurance. *Id.* He determined that Beecham had a residual functional capacity as of the date last insured for sedentary work, and that there were a significant number of jobs in the national economy that Beecham could have performed.

Finding 9 of the ALJ's ruling states that he used the Medical-Vocational Rules as a "framework" for determining whether Beecham was under a disability. The claimant, however, asserts that the ALJ used the Medical-Vocational Rules to "direct" a finding.

ALJ's decision became final when the Appeals Council denied review. Beecham filed a timely action in this Court seeking judicial review of the Commissioner's decision denying benefits. Under Local Civil Rule 72.2(b), I referred the case to Magistrate Judge Vernelis K. Armstrong, who issued a report. The Report, to which Beecham now objects, recommends that I affirm the denial of Beecham's request for benefits.

### Standard of Review

I review de novo of the portions of the Magistrate's Report to which Beecher objects. 28 U.S.C. § 636(b)(1). In reviewing the Commissioner's decision, however, I only determine whether 1) substantial evidence in the record supports the Commissioner's finding, and 2) the ALJ applied

6

the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

I "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson, supra*, 402 U.S. at 401); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1266 (6th Cir.1972)). If substantial evidence supports the ALJ's decision, I must accept it, even if I would decide the matter differently in the first instance. 42 U.S.C. § 405(g) (1998); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard, supra*, 889 F.2d at 681 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence in support exists, I view the record as a whole, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *Beavers v. Sec'y of Health Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

## Discussion

Beecham asserts five challenges to the Magistrate's Report. First, Beecham argues that the Magistrate erroneously affirmed the ALJ's failure to attribute controlling weight to Dr. Santoro's opinion. Second, Beecham argues that ALJ's residual functional capacity finding is flawed because the ALJ limited testimony to the pre-DLI period and misconstrued claimant's statements about the timeline of her deterioration. Third, Beecham argues that the ALJ improperly considered Beecham's daily household activities in assessing her residual functional capacity. Fourth, Beecham argues that

the magistrate erroneously affirmed the ALJ's determination that Beecham was not credible. Fifth, Beecham argues that the ALJ misapplied the Medical-Vocational Guidelines, or Grids.

**A. The Magistrate properly affirmed the ALJ's treatment of the medical opinion evidence.**

First, Beecham argues that the ALJ erroneously failed to give controlling weight to the opinion of Dr. Santoro, the plaintiff's treating physician.

The ALJ must adhere to certain governing standards in assessing the medical evidence supplied in support of a claim. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007). Generally, the ALJ must give greater deference to the medical opinions of treating physicians than to the opinions of non-treating physicians, a principle commonly known as the treating physician rule. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at * 2; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A treating physician's opinion concerning the nature and severity of the claimant's condition is controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527 (d)(2); *see also* Soc. Sec. Rul. 92-p, *supra*, 1996 WL 374188, at 2; *Wilson, supra*, 378 F.3d at 544.

If the treating physician's opinion is not controlling, the ALJ must consider the following factors to determine the opinion's weight: the length of the treatment relationship; the frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusion, and any other relevant factors. 20 C.F.R. § 404.1527 (d)(2)-(6); *Rogers, supra*, 486 F.3d at 242. Even if a treating physician's medical opinion does not meet the test for controlling weight, there is a rebuttable presumption that the ALJ should afford the opinion deference. *Wilson, supra*, 378 F.3d at 544.

The ALJ must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Soc. Sec. Rul. 92-p, *supra*, 1996 WL 374188, at *5. These reasons should that "make clear. . . the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight" so that the claimant understands the disposition of her case and the reviewing court can conduct meaningful review of the ALJ's decision. *Rogers, supra*, 486 F.3d at 242. The ALJ's failure to follow this procedural requirement constitutes a lack of substantial evidence, even where the record justifies the ALJ's conclusion. Soc. Sec. Rul. 92-p, *supra*, 1996 WL 374188, at *5.

The ALJ, however, is not bound by a treating physician's conclusory statements regarding a claimant's ability to function. A statement by a medical source that the claimant is "disabled" or "unable to work" does not compel the ALJ to determine that the claimant is disabled. 20 C.F.R. § 404.1527(e)(1). The ALJ need not give deference to "unsupported medical assumptions, even when made by a treating physician" *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988), or "bare opinion[s]" that are "not supported by the necessary laboratory and clinical findings." *Miller v. Sec'y of Health & Human Serv.,* 843 F.2d 221, 224 (6th Cir. 1988).

For instance, in *Vance v. Comm. Soc. Sec.,* 260 Fed. Appx. 801, 805 (6th Cir. 2008)(unpublished disposition), the court concluded that a treating physician's statement that the claimant was "unable to function in any type of work capacity" was not entitled to deference. This statement is "precisely the type of conclusory physician statement[] that amount[s] to a disability determination, *not* a medical opinion," and the court did not give it "any special significance." *Id.*

In this case, Beecham contends that the ALJ erred in not giving Dr. Santoro's note that Beecham was "[n]ow essentially incapacitated by pain" controlling weight and failed to give good

9

reasons for discounting it. This note appears in her medical records for April 28, 1999, her first visit to Dr. Santoro. Beecham's claim fails for three reasons. First, it is unclear whether this statement documents Dr. Santoro's own conclusion about Beecham's limitations or merely documents what Beecham told Dr. Santoro during her visit. Second, Dr. Santoro's records after April 28 indicate that Beecham's pain was "generally well-controlled" by medication. [Doc.11, p. 132]. Even if Dr. Santoro did conclude that she was "incapacitated" as of April 28, the ALJ could reasonably conclude that this assessment changed after Beecham began treatment.

Third and finally, even if it were Dr. Santoro's own conclusion that Beecham was "incapacitated by pain," this is a conclusory statement not entitled to deference under the treating physicians rule. Like the treating physician's statement in *Vance* that his patient was "unable to function in any type of work capacity," Dr. Santoro's note amounts to a disability determination. It is not a medical opinion describing Beecham's specific limitations; this note, therefore, is not entitled to deference and the ALJ need not give "good reasons" for discounting it.

Beecham further suggests that the ALJ's handling of medical opinions discounts Dr. Santoro's diagnosis of fibromyalgia. A diagnosis of fibromyalgia alone, however, is not sufficient to compel a conclusion that the claimant is disabled. Fibromyalgia is an "elusive" and "mysterious" disease with varied symptoms, including "severe musculo-skeletal pain, stiffness, fatigue, and multiple acute tender spots at various fixed locations on the body." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003); *see also Preston v. Sec'y Health & Human Serv.*, 854 F.2d 815, 817-18 (6th Cir. 1988). Some fibromyalgia patients have such severe cases that they are "totally disabled from working," but the majority do not. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th

Cir. 1996). *See also Vance, supra,* 260 Fed. Appx. at 806 ("[A] diagnosis of fibromyalgia does not automatically entitle [the claimant] to disability benefits.")

In this case, the ALJ accepted Dr. Santoro's diagnosis but concluded that Beecham's symptoms as of the date last insured did not amount to a disability. The ALJ found that on or before September 30, 2000, Beecham had "muscle aches and tender points from fibromyalgia that limited her strength." [Doc. 11, p. 426]. The ALJ further classified Beecham's fibromyalgia as a "severe impairment."*Id.* Because most fibromyalgia patients are not totally disabled, however, the ALJ's conclusion that Beecham could do sedentary work does not indicate that the ALJ discounted Dr. Santoro's diagnosis.

**B. The Magistrate properly affirmed the ALJ's residual functional capacity finding.**

Next, Beecham argues that the ALJ erred in concluding that she had a residual functional capacity for sedentary work. First, the claimant argues that the ALJ erroneously limited the claimant's and her husband's testimony to the pre-DLI period. Second, the claimant argues that ALJ VerWiebe was mistaken when he stated that Beecham's testimony about her limitations at the 2006 hearing clearly refer "to her present circumstances, not her limitations as of the date last insured" and that the Beecham was was "very vague about her exact limitations on exact dates." [Doc. 11, p. 429].

Because Beecham's claim is for disability insurance benefits under Title II of the Social Security Act, she bears the burden of proving that she became disabled prior to the date her disability insured status expired [date of last insuranceor DLI]. 20 C.F.R. § § 404.131(a); 404.320(b)(2); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became disabled

prior to the expiration of his insured status."). In this case, the plaintiff must establish disability prior to September 30, 2000, the date her insured status expired. The ALJ concluded that as of this date the claimant had a residual functional capacity to perform sedentary work.

Residual functional capacity is a "term of art" that describes the "ultimate finding about a persons' ability to do work-related activities." Standards for Consultative Examinations, HALLEX II-4-1-2 1996 WL 1586732 (Oct. 31)*; see also* 20 C.F.R. § 404.1546(c); 20 C.F.R. § 404.1545. In assessing residual functional capacity, the ALJ must consider "all of the relevant medical and other evidence," including, but not limited to, the claimant's own testimony, evidence provided by medical sources, and the observations of lay persons about the claimant's apparent limitations. 20 C.F.R. § 404.1545(a)(3). On reviewing the entire case record, the ALJ must "determine the most reasonable findings in light of all the evidence." Standards for Consultative Examinations, HALLEX II-4-1-2, *supra,* 1996 WL 1586732.

To determine a claimant's residual functional capacity as of the DLI, a court may consider evidence of the claimant's condition subsequent to the DLI. *Parsons v. Heckler*, 739 F.2d 1334, 1340 (D.S.D. 1987). Subsequent evidence, however, "must relate to the claimant's condition prior to the expiration of his insured status" to be relevant. *Miracle v. Chater*, 1997 WL 242055, at *1(6th Cir. 1997) (unpublished disposition).

Evidence that the claimant's condition deteriorated after the DLI is irrelevant.*Estok v. Apfel,* 152 F.3d 636, 638 (7th Cir. 1998) (The claimant was totally disabled due to fibromyalgia at the time of the proceeding, but the "record does not mandate a finding that [the claimant] became disabled" prior to the DLI.); *Casey v. Sec'y of Health & Human Serv., 987 F.2d 1230, 1233 (6th Cir. 1993)* (Evidence that the claimant's condition after the DLI changed is "outside the scope of our inquiry.").

Post-DLI evidence is "minimally probative," if it is the only evidence of the claimant's alleged limitations as of the DLI. _Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)_; _Sienkiewicz v. Barnhart, 409 F.3d 798, 802 (7th Cir. 2005)_; _Miracle v. Chater, supra, 1997 WL 242055_, at *1.

In this case, the ALJ evaluated the requisite types of evidence in assessing residual functional capacity and there is substantial evidence to support the ALJ's conclusion. The ALJ considered the medical evidence, Beecham's testimony, and the testimony of Beecham's husband. The ALJ noted that Beecham is clearly "more limited now . . . than she was at the date last insured." [Doc. 11, p. 429]. The ALJ's emphasis on pre-DLI evidence is appropriate, because post-DLI evidence only illustrates the extent of her deterioration.

Beecham disputes that her testimony in 2006 referred to her "present circumstances, not her limitations as of the date last insured" and the ALJ's description of her testimony as "vague" about when her limitations dev eloped. [Doc. 11, p. 429]. There are, however, several inconsistencies in Beecham's own testimony in the 2004 and 2006 hearings about the extent of her capabilities in 2000. In the earlier hearing, Beecham stated that she could drive, clean, and grocery shop in 2000, and in the later hearing Beecham stated that she could not do any of these activities in 2000. Beecham's allegations of pain in 2000, moreover, conflict with Dr. Santoro's July 26, 2000, not indicating that Beecham's pain was controlled by medication. The ALJ concluded that Beecham was mistakenly describing her post-2000 limitations at the hearing. Because a reasonable mind might draw the same conclusion, the ALJ's interpretation of the facts is supported by substantial evidence.

**C. The Magistrate properly affirmed the ALJ's consideration of the plaintiff's daily activities**

13

Beecham claims that the ALJ erred in considering her daily activities to determine her ability to engage in full-time work activities.

An ALJ may properly consider the claimant's daily, household activities in evaluating the extent of the claimant's pain; in fact, agency regulations require the ALJ to consider "daily activities" in determining residual functional capacity. 20 C.F.R. § 404.1529(c)(3)(i). In *Powers v. Comm'r Soc. Sec.*, 195 Fed. Appx. 407, 413 (6th Cir. 2006) (unpublished disposition), the court affirmed the ALJ's finding that the claimant could perform "light work" notwithstanding the claimant's allegation that she could only "sit or stand for a combined total of four hours per day." The claimant's "daily activities of crocheting, grocery-shopping, cooking family meals, visiting with her sister-in-law, hanging laundry, attending church, and outdoor walking for roughly a mile and a half, belie any subjective claims of pain." *Id. See also Sizemore v. Sec'y Health & Human Serv.*, 865 F.2d 709, 713 (5th Cir. 1988) (ALJ properly found allegation of disabling pain not credible where claimant "was able to drive an automobile, shop, do housework, visit relatives regularly and babysit."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d, 387-392 (6th Cir. 2004)(ALJ justifiably considered that claimant could "manage his personal hygiene, pick a coin off a table, vacuum, drive short distances, and wash spoons and forks" in evaluating claim of disabling pain.); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) ("The ALJ may properly consider the household and social activities in evaluating claims of disabling pain or other symptoms," including "hunting, fishing, and walking on a daily basis.").

Beecham's argument relies on the court's opinion in *Rogers, supra,* 486 F.3d at 248. In *Rogers*, the court held that the ALJ erred in using the claimant's "minimal daily functions" as evidence that the claimant's allegations of pain due to fibromyalgia were not credible. *Id.* The ALJ's

opinion stated that the claimant could "drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news."

The court took issue with this statement for two reasons. First, the ALJ had mischaracterized claimant's testimony, exaggerating the extent of her daily, household activity. *Id.* The claimant in fact did "very little driving due to her inability to sit for more than a few minutes," engaged in "light housekeeping only," cared for her dogs only by "opening the door" to let them out, and "liked to read" but had "difficulty holding a book." *Id.* at 249. Claimant's "stretching exercises" were recommended by her treating physicians as treatment for her fibromyalgia, but these physicians maintained that her pain was highly limiting. *Id.* Second, the court explained that the claimant's very limited household activities were not "comparable to typical work activities." *Id.* at 248. The court in *Rogers* court did not hold that household activities were probative of a claimant's ability to perform full-time work.

In this case, the ALJ's consideration of Beecham's daily activities was proper. The ALJ's statement that Beecham could drive, clean house, and shop in 2000 reflect Beecham's own statements during the 2004 hearing. Driving, cleaning, and shopping, moreover, are more strenuous activities than the claimant's activities in *Rogers*.

### D. The Magistrate properly affirmed the ALJ's credibility determination

Beecham claims that the ALJ erred in making an adverse credibility determination after stating during the hearing that Beecham's statements were credible. Beecham further objects to the Magistrate's statement that even if Beecham were fully credible it would not affect the outcome because her testimony was not corroborated by medical evidence.

Subjective claims of pain can support a claim for disability. If there is "objective medical evidence of an underlying medical condition on the record," there is "no question" that subjective complaints may support a claim. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir., 2003). If there is no underlying medical basis for the claimant's allegation of pain, however, "the ALJ is not required to fully credit" the claimant's subjective complaints. *Fraley v. Sec'y Heath & Hum. Serv.,* 733 F.2d 437, 440 (6th Cir. 1984); *see also McCann v. Califano,* 621 F.2d 829, 831 (6th Cir. 1980).

The ALJ, however, is not required to accept a claimant's subjective complaints of pain if the ALJ determines that the claimant is not credible. *Jones, supra,* 336 F.3d at 476; *see also Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Credibility is "crucial" to the resolution of a claim of pain, *Kirk v. Sec'y Health & Hum. Servs.,* 667 F.2d 524, 538 (6th Cir. 1981), because "tolerance of pain is a highly individual matter." *Houston v. Sec'y Health & Hum Servs.,* 736 F.2d 365, 367 (6th Cir. 1984); *see also Villareal v. Sec'y Health & Hum Servs.,* 818 F.2d 461, 463 (6th Cir. 1987).

Reviewing courts must afford great deference to the ALJ's credibility assessment because the ALJ has the opportunity to observe the claimant's demeanor. *Walters, supra,* 127 F.3d at 531; *Villarreal, supra,* 818 F.2d at 463; *Kirk, supra,* 667 F.2d at 538. Reviewing courts, therefore, are limited to evaluating whether "the ALJ's explanations for partially discrediting [the claimant] are reasonable and supported by substantial evidence on the record." *Jones, supra,* 336 F.3d at 476; *see also Tyra v. Sec'y Health & Hum. Servs.,* 896 F.2d 1024, 1030 (6th Cir. 1990). In reviewing the ALJ's credibility determination, a court must evaluate whether the ALJ's determination is supported

16

by substantial evidence in "the record as a whole." *Brant v. Comm'r of Soc. Sec.*, 2002 WL 771317, at *2 (6th Cir. 2002)(unpublished disposition).

In *Rogers, supra*, 486 F.3d at 247-49, however, the court noted that the ALJ may not base a credibility determination solely on an "intangible or intuitive notion about the individual's credibility. Rather, such determinations must find support in the record." *Id.* (citations omitted). Also, credibility determinations must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.* at 248. "[B]lanket assertions that the claimant is not believable will not pass muster." *Id.*

In *Rogers,* the also court emphasized the importance of consistency in evaluating the claimant's credibility. The ALJ should scrutinize "consistency of various pieces of information contained in the record," such as consistency "between a claimant's symptom complaints and other evidence in the record." *Id.* at 247-48. Consistency "tends to support the credibility of the complainant," but inconsistency, "although not necessarily defeating, should have the opposite effect." *Id.* at 248.

In this case, the ALJ's credibility determination is reasonable. As the ALJ notes, there is inconsistency within Beecham's own testimony regarding her limitations as of her date last insured. During the 2004 hearing, Beecham testified that she could drive, clean her home, or shop at the grocery store in September, 2000, but in 2006 she testified that she could not do any of these things in 2000. In 2004, she testified that she left her position at Sunoco because it required her to lift fifty pound cans, and in 2006 she testified that she left this position because she had to take twenty-minute rests from standing. These inconsistencies are understandable given the lapse of time

17

between the hearings and the date last insured, but they do suggest that Beecham's memory is not wholly reliable. Beecham's description of her pain is also inconsistent with Dr. Santoro's July 26, 2000 note that her pain was well-regulated.

These inconsistencies are a tangible, specific reason for the ALJ to distrust Beecham's testimony. The ALJ's finding that Beecham's testimony about her limitations was only partially credible must therefore stand.

Beecham also claims that the ALJ made a statement on the record that she was credible, suggesting that this precluded further assement of her credibility. First, it is unclear that the ALJ was, in fact, making a definitive statement regarding Beecham's credibility or reliability. After Beecham's attorney explained that the discrepancies in her testimony may have resulted from "confusion" on Beecham's part, the ALJ stated, "I'm not worried about credibility[,]  .  .  . unless they're out and out lying, which I'm sure [Beecham] is not." [Doc. 11, p. 487].This statement may suggest that the ALJ believed Beecham's statements to be truthful at the time. It does not, however, indicate that the ALJ believed Beecham's recollection of her condition in 2000 was reliable. Moreover, this statement cannot be treated as determinative. Because the ALJ must scrutinize the entire record before determining credibility, an oral comment made during the hearing cannot control.

Because substantial evidence supports the ALJ's credibility determination and the ALJ's statement during the hearing is not determinative, it is unnecessary to consider whether a favorable credibility determination would have altered the ultimate outcome of the case.

### E. The Magistrate properly affirmed the ALJ's application of the Grids

18

Beecham claims that the ALJ erred in step five of the sequential evaluation by misapplying the Medical-Vocational Guidelines, or Grids, 20 C.F.R. Part 404, Subpart P, Appendix 2,  and wrongly concluding that Beecham could adapt to unskilled, sedentary work.

To determine whether a claimant is disabled, the ALJ must use a five-step sequential evaluation process. 20 C.F.R. § 1520(a). First, the claimant must not be working. Second, the claimant must have a "severe medically determinable physical or mental impairment." *Id.* at § 1520(a)(4)(i). Third, the ALJ must determine whether the claimant's impairment meets or equals a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at § 1520(a)(4)(ii). Fourth, the ALJ must assess the claimant's residual functional capacity and work history to determine whether the claimant can still do past relevant work. *Id.* at § 1520(a)(4)(iii). Fifth, the ALJ will determine whether the claimant can adjust to other work. *Id.* at § 1520(a)(4)(v). In step five of the evaluation, the burden shifts to the Secretary to show that the claimant can perform other jobs which exist in significant numbers in the national economy. *Moon, supra,* 923 F.2d at 1181.

In this case, the ALJ determined that Beecham's situation satisfied steps one through four of the analysis; the Secretary, therefore, bears the burden of showing that Beecham can adjust to new, available work. The issue here is whether the Secretary has met his burden.

The Secretary may satisfy the step-five burden with the testimony of a vocational expert or by using the Grids. A VE's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that validly sets forth the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Hum. Servs.,* 820 F.2d 777,779 (6th Cir. 1987). The Secretary's burden can "on occasion" be satisfied by relying on the Grids alone, without the testimony of a VE. *Moon, supra,* 923 F.2d at 1181.

When the claimant has only exertional limitations, the ALJ may properly rely solely on the Grids to determine whether the claimant has a disability. 20 C.F.R. § 404.1569a(b). Exertional limitations are those which limit the claimant's ability to "meet the strength demands of jobs," such as "sitting, standing, walking, lifting, carrying, pushing and pulling." *Id.* at § 404.1569a(a).

If a claimant has both exertional and nonexertional limitations, the Grids may serve only as a "framework to guide" the ALJ's decision, and cannot "direct" a disability finding. *Id.* at § 404.1569a(d). Nonexertional limitations affect the claimant's ability to meet demands of the job unrelated to strength; examples of nonexertional limitations include nervousness, depression, difficulty concentrating, difficulty seeing or hearing, among others. *Id.* at § 404.1569a(c). If the ALJ finds that the claimant has a "severe restriction[]" not taken into account by the Grids – such as a nonexertional restriction -- the ALJ must hear from a vocational expert to determine whether jobs exist that the claimant can perform. *Cooper v. Sec'y Health & Hum. Servs.,* 1988 WL 27503, at *5 (6th Cir.); *see also Damron v. Sec'y Health & Hum. Servs.,* 778 F.2d 279, 282 (6th Cir. 1985); 20 C.F.R. § 404.156 0.

Neither a "mere possibility of a nonexertional impairment" nor a "minor nonexertional limitation," however, precludes the ALJ from relying solely on the Grids. *Kimbrough v. Sec'y Health & Hum. Servs.,* 801 F.2d 794, 796 (6th Cir. 1986). The ALJ errs in relying on the grids only where a nonexertional impairment "significantly limits his ability to do the full range of work at a designated level." *Id.*

In this case, the Magistrate properly found that the VE's testimony could not constitute substantial evidence because ALJ failed to pose a hypothetical question that reflected Beecham's physical and mental impairments. Instead, the ALJ first asked the VE to assume that Beecham's

testimony was fully credible, and then asked the VE to assume that Beecham could perform sedentary work. Because the VE's responses are not substantial evidence, the ALJ's conclusion may only stand if complete reliance on the Grids was proper.

The ALJ properly relied on the Grids to determine Beecham's ability to adapt to other work. The remand order did not require the ALJ to consult a VE, it merely instructed the ALJ to do so if necessary. Despite Beecham's alleged non-exertional impairments, such as depression, the ALJ determined that these impairments were not severe as of the date of last insurance. Because Beecham's only severe limitations were exertional, the ALJ properly relied on the Grids to sustain the burden at step five of the sequential evaluation.

Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff Susan Beecham's appeal of the Magistrate's decision affirming the ALJ's denial of benefits be, and the same is, hereby overruled.

So ordered.

S/James G. Carr
James G. Carr
Chief Judge